IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES L. STRITEHOFF, #352107      *
       Plaintiff,
   v.                     *   CIVIL NO. CCB-09-3003

KATHLEEN GREEN                     *
MARY COOPER
V. ENNIS                           *
CAPTAIN RHODES
LT. C. THORNE                      *
       Defendants.
                            ***

MEMORANDUM

On November 30, 2009, the court received this 42 U.S.C. § 1983 complaint for damages from James Stritehoff, an inmate currently housed at the Eastern Correctional Institution ("ECI") in Westover, Maryland. Plaintiff contends he was transferred to ECI protective custody on December 9, 2008, after he was the victim of an inmate assault carried out by the Dead Man Incorporated ("DMI") gang while confined in the Hagerstown, Maryland prison complex. ECF No. 1. He claims that there remains an "active order" within DMI to have him killed on sight and ECI is aware of this threat as he has complained about his safety needs multiple times. Plaintiff asserts that he was never formally placed on protective custody, but was kept on the ECI "ASOA" area.[1] He maintains that he should be housed on protective custody or in a single cell. Plaintiff alleges that twice he was ordered to ECI general population. He states that he refused assignment, was cited with infractions for failure to obey a direct order, and placed on segregation, where he was deprived of his property. Each time he was found not guilty of the infractions based upon the Commissioner's and classification case manager's communications regarding the safety reasons for his transfer to ECI.

---

[1] At no point in the pleadings is the acronym "ASOA" explained. This acronym is the designation for the Administrative Segregation Observation Area. *See Benton v. Green,* No. 08-1729 (D. Md. Apr. 23, 2009).

He complains that for a three and one-half month period he suffered psychological damages. Plaintiff also contends that during this time he was deliberately denied emergency dental treatment. ECF No. 1. In his amended complaint plaintiff discusses the involvement of defendants Green, Cooper, and Ennis.[2] ECF No. 23.

Defendants have filed a motion to dismiss or, in the alternative, motion for summary judgment, and plaintiff has filed an opposition thereto. ECF Nos. 20 & 24. Plaintiff was granted leave to amend his complaint, and defendants filed a reply. ECF Nos. 23 & 27. The matter is ready for consideration and may be determined without oral hearing. *See* Local Rule 105.6 (D. Md. 2010).

Fed. R. Civ. P. 56(c)(2) provides that:

> [Summary judgment] sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view

---

[2] Plaintiff asks that defendant Ennis be dismissed from his case. ECF No. 23 at p. 3.

the evidence in the light most favorable to...the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). In sum, it has an obligation to ensure that factually unsupported claims and defenses do not go to trial. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp.*, 477 U. S. at 323-24 (1986)).

The record shows that plaintiff was assaulted by members of DMI while housed at the Maryland Correctional Institution in Hagerstown ("MCIH"). Miller Decl. Ex. A. ECF No. 20. Defendants state that he was transferred to ECI on December 9, 2008, with the "possibility" of protective custody, but MCIH personnel had not recommended that he be placed on protective custody. At his initial ECI orientation review on December 11, 2008, a classification team noted plaintiff's validated DMI enemies and the prior DMI assault and recommended that he be transferred from orientation to protective custody. *Id*. at 4. Assistant Warden Cooper, however, did not concur with the recommendation and noted that as MCIH staff had not specifically recommended protective custody housing and plaintiff had no documented enemies at ECI, he could be housed in general population. Warden Green concurred. *Id*. As of December 12, 2008, plaintiff was housed in the general population unit of ECI Housing Unit ("HU") 5. For two days plaintiff was housed on the ASOA unit and temporarily placed on administrative segregation from December 19 to December 23, 2008, when he was again moved into general population of HU 5. *Id*.

On January 7, 2009, plaintiff was told to move to general population in HU 8. He refused and a notice of infraction was issued. Plaintiff was placed on administrative segregation pending

3

adjustment. The disciplinary hearing occurred on March 5, 2009, and he was found not guilty. On that same date, however, plaintiff was ordered moved to HU 8 general population. He again refused and was issued another adjustment infraction. *Id.* He was found not guilty of the infraction on March 24, 2009, and was returned to general population on HU 5, where he remained until he was placed on protective custody on April 15, 2009.[3]

Regarding the medical claims, the defendants state that plaintiff submitted a sick-call request on January 18, 2009, stating that one of his teeth had broken and was causing him discomfort. Cert. of Records, Ex. B at 3, ECF No. 20. On February 6, 2009, he could not appear for his dental appointment because he did not have an escort. He submitted another sick-call encounter form on February 20, 2009, stating that his tooth had broken and that his gums were swollen. On March 13, 2009, plaintiff submitted a sick-call slip regarding his dental problem and was examined on March 18, 2009. His next appointment was scheduled for April 27, 2009, because a dentist was not immediately available. On April 30, 2009, six of plaintiff's teeth were extracted. Defendants argue that at all times plaintiff met with and was treated by healthcare professionals, who were not employed by the Maryland Division of Correction ("DOC") and were not under Warden Green's supervision. Green Decl. Ex. C, at 2, ECF No. 20.

Plaintiff claims that he was physically injured due to defendants' deliberate indifference to his safety when their "interference" caused him to experience a delay in dental care. He states that they failed to provide him escort for medical care on February 6, 2009, and, as a result of delays, six-- not two-- of his teeth had to be removed. ECF No. 24 at 1. Plaintiff also states that he suffered

---

[3] The court observes that defendants do not provide any documentation explaining the reasons for the adjustment findings. Plaintiff, however, cures this omission. His opposition documents show that he was found not guilty based on a letter written by the Commissioner the day prior to the February 10, 2009 notice of infraction which indicated that plaintiff should be placed on administrative segregation due to alleged enemies and questions as to whether the correctional officer who wrote the adjustment had the authority to place plaintiff in general population. ECF. No. 24, Ex. 3 at 2; Ex. 5 at 3.

psychological injury due to defendants' refusal to take any measures to protect him from DMI. He claims that had he been housed on general population, he "would have been hit again and may not have been here today." *Id*. at 3. Plaintiff states that he satisfies the criteria for physical injury under 42 U.S.C. § 1997e(e), because he was assaulted by the DMI gang prior to his transfer to ECI, and he may seek punitive damages for defendants' failure to uphold their duty to protect him and for deliberately inflicting psychological pain.

Plaintiff also claims that defendants are not absolved of responsibility for delays in providing him dental treatment because defendant Thorne, as manager of HU 5, is responsible for providing escorts from HU 5 to the medical and dental departments. He again contends that despite calls to his HU in February of 2009, he was not provided an escort to the medical department from his segregation unit. He states that "defendants used their control of escort officers to deliberately deny me access to dental treatment." *Id*. at 5.

In their reply, defendants state that all inmates in HU 5 require escorts to appointments and every effort is made to provide inmates with requested escorts. Thorne Decl. Ex. A, at 1, ECF No. 27. Lt. Thorne, HU 5 Manager, affirms that he would never intentionally deny an inmate an escort and no one informed him on February 6, 2009, that plaintiff had an emergency need for an escort.

The complaint sufficiently sets out failure-to-protect and denial of medical care claims under the Eighth Amendment. Each claim shall be evaluated.

Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302-303 (4th Cir. 2004); *Rish v. Johnson*,

5

131 F.3d 1092, 1096 (4th Cir. 1997). Under Fourth Circuit law, liability under the *Farmer* standard requires two showings. First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk. *See* Parrish, 372 F.3d at 303. Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." *Id*. An officer who responds reasonably to "the risk of which he actually knew" is not liable for deliberate indifference. *See Brown v. Harris,* 240 F.3d 383, 390-91 (4th Cir. 2001). Further, to state a claim for damages, the inmate must show a serious physical injury. *See De'Lonta v. Angelone*, 330 F. 3d 630, 634 (4th Cir. 2003); *see also Babcock v. White*, 102 F.3d 267, 272-73 (7th Cir. 1996).

Plaintiff has been called upon to rebut defendants' declarations and materials with his own verified documents to establish a genuine dispute of material fact. The facts show that plaintiff was transferred to ECI in December of 2008, after he had been assaulted by two inmates in September of 2008 at MCIH. The ECI classification management assignment sheet indicates that ECI personnel were aware of this history when plaintiff was received, but a determination was made by ECI officials that he could be assigned to general population because he had no enemies at ECI and MCIH had made no formal recommendation for protective custody assignment. It was not until April 10, 2009, that a new classification recommendation for plaintiff's removal from administrative segregation to protective custody was approved by ECI officials. This recommendation was based upon plaintiff's claims that the DMI gang believed he testified in court against other DMI members and he had been assaulted by DMI members at MCIH.

There is no dispute that for the first four and one-half months of his ECI assignment, beginning in December of 2008, plaintiff was not classified to protective custody. A good portion

6

of that time was spent on ASOA or administrative segregation housing. Plaintiff has failed to produce one piece of evidence showing that he was transferred to ECI for assignment to protective custody. In their discretion, ECI officials believed he could be housed on general population because no classification order existed for his assignment to protective custody and there were no enemies on his OBSCIS list who were housed at ECI. No deliberate indifference has been shown. Moreover, plaintiff only references the psychological trauma he experienced and has not shown that during the time in question he experienced physical injury from the alleged failure-to-protect deprivations at ECI. The Prison Litigation Reform Act states that "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See* 42 U.S.C. § 1997e(e). It is settled law that a prior physical injury is required for a prisoner to recover damages for emotional and mental injury. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997). Plaintiff has not made a showing of physical injury connected to the Eighth Amendment deprivation.[4]

Plaintiff also claims that defendants are culpable for delays in his dental treatment because they failed to provide him an escort to the dentist on February 6, 2009. Denial of dental care is considered a denial of medical care, which can constitute an Eighth Amendment violation when prison authorities are deliberately indifferent to an inmate's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *see also Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (" 'Dental care is one of the most important medical needs of inmates.'") (quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)). Plaintiff must prove two essential elements to support an Eighth Amendment claim. First, he must satisfy the "objective" component by illustrating a serious

---

[4] Plaintiff claims that he experienced physical injury prior to his transfer to ECI when he was assaulted at MCIH and suffered delays in receipt of dental care while housed at ECI. Neither physical harm is

7

medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If this first element is satisfied, he must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [. . .] [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Although a mere delay in needed dental care will not violate the Eighth Amendment, when the delay gives rise to a substantial risk of serious harm to an inmate, the requisite deliberate indifference to a serious medical need is found. *See Farrow v. West*, 320 F.3d 1235, 1243-44 (11th Cir. 2003) (need for dental care combined with the effects of not receiving it may give rise to an Eighth Amendment claim;) *see also Boyd v. Knox*, 47 F.3d. 966, 969 (8th Cir. 1995) (delay in dental care coupled with knowledge of patient's pain can support Eighth Amendment claim).

Based upon a review of the complaint and briefing, it is clear that plaintiff's dental care unfortunately was delayed when he was called but not escorted to the dental department for evaluation on February 6, 2009. Aside from his own assertions, however, plaintiff has failed to show that: (1) the failure to provide him an escort on that date occurred as a knowing and deliberate act to cause him pain, rather than mere negligence or the unavailability of escort staff that may frequently happen on a day-day basis in the prison setting; (2) any delay in receipt of dental evaluation and treatment caused by the failure to escort him on that date was the proximate cause of exacerbating his dental problems; and (3) the fact that he was housed on administrative segregation

---

directly attributable to the ECI failure-to-protect issues raised in the complaint.

8

in HU 5 rather than protective custody made a difference in the escort situation. The record shows that plaintiff submitted two other sick-call encounter forms regarding his dental problems on February 20, 2009, and on March 13, 2009. He was escorted to the dental department and examined on March 18, 2009 and also escorted on April 30, 2009, when six of his teeth were extracted. These visits and treatment were scheduled through medical, not security, staff. Plaintiff has failed to show that prison personnel were otherwise indifferent to his dental needs.

For the aforementioned reasons, judgment will be granted in favor of defendants and against plaintiff.[5]  A separate Order follows.


Date: <u>November 30, 2010</u>                             /s/
                                                Catherine C. Blake
                                                United States District Judge

---

[5] The complaint against defendant Ennis shall be dismissed upon plaintiff's request for voluntary dismissal.